**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 28, 2014**

# In the Court of Appeals of Georgia

A14A1465. CHESTER v. THE STATE.

BOGGS, Judge.

Michael Rashad Chester was indicted by a DeKalb County grand jury on charges of kidnapping, false imprisonment, attempt to commit a felony, aggravated sodomy, aggravated sexual battery, sexual battery, aggravated assault, false imprisonment, and burglary, committed against four victims. A jury found him guilty on all 18 counts of the indictment, and he was sentenced to two consecutive life terms plus 15 years. His amended motion for new trial was denied, and he appeals, asserting seven enumerations of error. For the reasons stated below, we affirm but vacate the judgment of conviction and remand as to counts that should have been merged for sentencing.

1. Chester raises insufficiency of the evidence with respect to his conviction for sexual battery against one of the victims. He contends that the State failed to prove the necessary element of lack of consent, because the victim did not verbally object to his initial advances or physically prevent him from fondling her. The victim admitted that she did not say anything when Chester began touching her, but stated that she did not do so because she was "nervous and scared." At the time he committed the offense in question, Chester had offered the victim a ride to the store but instead had driven her in the wrong direction, to a vacant house. After he touched her, she attempted to get out of the car, and he dragged her back by her hair. He displayed a gun and ordered her to unbutton her pants; she jumped from the moving car and was injured, but escaped.

Lack of consent may be proved by means other than an unambiguous verbal statement to the accused. Here, the State presented evidence of lack of consent, including the victim's nervousness and fear after Chester did not drive her to the promised destination. "It is well settled that lack of resistance, induced by fear, is not legally cognizable consent." (Citation and punctuation omitted.) *Littleton v. State*, 225 Ga. App. 900, 901 (1) (485 SE2d 230) (1997). And whether a victim consented

is a matter "solely within the province of the jury." Id.; see also *Roberts v. State*, 242 Ga. App. 621, 623 (1) (a) (530 SE2d 535) (2000). Chester's argument

> merely raise[s] issues of fact as to whether the victim can reasonably be deemed to have *consented* to the act. The defendant is not required to "read the victim's mind" or understand her internal thought processes; he is only required not to impose sex upon her without her free consent. Whether he did so is a question of intent, which the jury determines according to the *reasonableness of her testimony as to lack of consent*, not the reasonableness of her fear.

(Emphasis in original.) *Clark v. State*, 197 Ga. App. 318, 321 (3) (398 SE2d 377) (1990), aff'd, 261 Ga. 311 (404 SE2d 787) (1991). Construed in favor of the jury's verdict, this evidence was sufficient to allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt within the meaning of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Chester contends the trial court erred in denying his motion for mistrial after alleged jury misconduct. After the first day of trial, defense counsel announced that an assistant public defender who was not involved in the case reported that she had overheard several jurors "discussing the case" and that at least one person said "that they thought he, in fact, was guilty." The following morning, Chester moved for a mistrial and the trial court summoned all the jurors for voir dire examination. The trial

court questioned each juror individually regarding the allegations; counsel asked questions of the jurors as well.

All jurors but one agreed that nothing was said about the case. One juror who testified that she was "a little scattered" due to having a wakeful baby at home, first testified that she did not "recall any of us saying we thought that he was guilty or not guilty, no." She added, "We kind of talked about something but I don't think it was really evidence per se." Under further questioning by counsel, she did not remember "making any remarks about yesterday's events . . . but it doesn't mean I couldn't have honestly." Counsel then continued,

> Q. But what you do remember is that there was some discussion about something that happened yesterday during our course of putting this case up? Somebody discussed something?
> A. I think so, yes, but I couldn't tell you words or anything like that.
> Q. So you don't know if what was said was good, bad or indifferent about yesterday's events.
> A. If anything, it was indifferent; it wasn't good or bad.
> Q. But there was a discussion?
> A. I'm sorry. I wish I – so vague here. I'm very sorry about that.
> Q. Okay.

Defense counsel then called the assistant public defender who originally brought the conversation to his attention. She testified that as she was entering the courthouse through the security line, she saw "a big group" of people wearing red

juror badges; she was not watching them, but she overheard a woman's voice in this group. Asked what she heard, she responded, "I could have misheard but what I remember hearing is 'I think he probably did it.'" She did not hear anything else and did not know what particular subject the person was discussing.

After hearing argument from counsel, the trial court denied the motion for mistrial, observing that other jurors might be wearing red badges, that he considered the strong presumption that witnesses were telling the truth, that he had found these jurors to be conscientious and responsible, and that no evidence had been presented that the remark pertained to the trial rather than some other matter. The court rejected the defense's suggestion that all 15 jurors and alternates who did not recall any discussion of the case had conspired to lie to the court. Later in the day, Chester's counsel pointed out that Chester's trial was the only one in progress and thus the jurors must have been assigned to his trial, but the trial court again denied the motion for mistrial, stating that the important point was that the alleged statement had been given no context and that, contrary to the defense's original contention, the witness was not able to confirm that there was any discussion about the case.

"The presence of juror misconduct is a question of fact for the trial judge, and barring an abuse of discretion, will not be disturbed on appeal. [Cit.]" *Robinson v.*

*State*, 281 Ga. App. 76, 80 (5) (635 SE2d 380) (2006). Here, the trial court conducted a thorough and searching inquiry, questioning not only the jurors but the witness who overheard the remark. It concluded that no evidence had been presented of a prejudicial statement by a juror, and it did not abuse its discretion in so doing. While Chester argues that prejudice must be presumed, we do not reach that stage of inquiry because the trial court found no misconduct to support a presumption, and that finding was within its broad discretion. This enumeration of error is without merit.

3. Chester contends the trial court erred in refusing to consider evidence in mitigation at sentencing. But the trial court did not refuse to consider evidence; rather, it declined to grant defense counsel's request for a delay in sentencing on the basis that counsel had "some information I would like one of our social workers to gather from Mr. Chester. Obviously there's [a] lot at stake here in terms of the time that he is subject to, and I think that having the time to prepare some evidence in mitigation is important to this case." The trial court responded,

> I'm going to deny it. I don't think there's anything in mitigation he could offer me that would change my mind about the sentence today. I have given this a great deal of thought. We have had many opportunities for Mr. Chester to consider something less than this day. Much of this is statutory anyway. I just can't imagine that there's any reason he's [] entitled by law to a presentence investigation. I'm going to deny your

6

motion. I'm going to go ahead. You can – I'll take a verbal offer but his position was this was sex for hire and it didn't work out that way.

The State and the defense then presented argument on sentencing. Defense counsel referred to previous hearings at which the trial court had heard information and recited various general contentions in mitigation such as Chester's being "very involved" with the life of his daughter, that his mother was present throughout his trial, that he was taking GED classes, and that he was employed. The trial court then sentenced Chester to a term less than that requested by the State but greater than that requested by Chester.

Chester contends that the trial court's refusal to grant a continuance so that counsel could gather evidence in mitigation amounted to "a complete refusal to consider the variety of factors that must go into a sentence determination," a refusal to exercise discretion, and "an abdication of responsibility similar to sentencing based on a rigid policy." The State, on the other hand, argues that the trial court did hold a sentencing hearing as required by OCGA § 17-10-2, that both a continuance and the preparation of a presentence report are within the trial court's discretion, and that the trial court did not abuse its discretion in denying a continuance to obtain a presentence report.

But we need not consider whether the trial court's actions amounted to error, because Chester must also demonstrate harm. At the hearing on his motion for new trial, over two years after the ruling complained of, Chester argued this issue. But he did not present or even identify any evidence – by proffer, by affidavit, or by live witness – which he would have offered in mitigation at sentencing.

> To be entitled to a new trial based upon the denial of a motion for a continuance, an appellant has the burden of showing that he was harmed by that denial. [Chester] has made no proffer of evidence that he could have introduced had a continuance been granted, nor has he otherwise shown that a continuance would have benefitted him. Accordingly, [he] has not carried his burden of showing harmful error.

(Citations and punctuation omitted.) *Murray v. State*, __ Ga. App. __ (3) (Case No. A14A0715, decided July 10, 2014). Chester has failed to show that he was harmed by the trial court's failure to grant a continuance, and this enumeration of error is therefore without merit.

4. Chester contends the trial court erred in its response to a question from the jury. The trial court charged the jury, deliberations began, the jury asked one question, which was answered by the court, and then after further deliberation the jury was sent home for the weekend. On Monday, the jury deliberated until the afternoon

8

and then sent out a written note with two questions for the court: "Is the belief in the defendant's guilt or innocence of the charge of 'attempt to commit the crime of rape' necessary to convict or acquit the defendant of Count Number 5 = Attempt to commit a felony?" and "If we do not necessarily believe that the defendant was attempting to commit the crime of rape, is it our duty to find him innocent of attempt to commit a felony?" The trial court conferred with counsel and concluded that "this invades – for me to respond invades the province of the jury." The court informed the defendant, "I've conferred with the lawyers and we all agree this is not a question I can provide legal guidance to the jury about . . . . What I can do is refer them back to the charges as I have before, okay?" The court then instructed the jury that it would "refer you back to the charges that I've already written down and provided each of you with a copy." The jury returned to its deliberations and reached a verdict of guilty on that charge.

The trial court read to the jury the text of the indictment, which also went out with the jury.[1] The court instructed the jurors on the presumption of innocence and

---

[1] Count 5 of the indictment charged Chester "with the offense of ATTEMPT TO COMMIT A FELONY for the said accused person . . . did attempt to commit the crime of Rape, in violation of Code Section 16-6-1 of the Official Code of Georgia, in that the said accused did knowingly and intentionally point a handgun at [the victim] . . . and demand that she unbutton her pants, acts which constitute a

9

reasonable doubt and the elements of attempt to commit rape. It also specifically instructed the jury as to the form of the verdict with respect to Count 5 and each element of the offense charged, as well as reiterating the jury's duty to find the defendant not guilty if it had any reasonable doubt as to his guilt.[2]

> As a general rule, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court. When the jury requests more instructions upon a particular phase of the case, the trial court is under a duty to instruct them in a plain, clear manner so as to enlighten rather than confuse them. The court may respond to a jury's question by repeating charges which are legally sufficient and not misleading.

(Citations and punctuation omitted.) *McElroy v. State*, 244 Ga. App. 500, 501-502 (1) (a) (536 SE2d 188) (2000).

---

substantial step toward the commission of said crime."

[2]The trial court instructed the jury: "If after considering the testimony and evidence presented to you together with the charge of the Court you should find and believe beyond a reasonable doubt that the defendant . . . did . . . commit the offense of attempt to commit a felony by attempting to commit the crime of rape . . . as alleged in the indictment, you would be authorized to find the defendant guilty. In that event the form of your verdict would be we, the jury, find the defendant guilty. If you do not believe that the defendant is guilty of attempt to commit a felony or if you have any reasonable doubt as to the defendant's guilty, then it would be your duty to acquit the defendant."

The trial court correctly concluded that it had provided all the applicable legal principles for the jury, and counsel was not ineffective in failing to object. "It is well settled that the failure to make a meritless objection cannot be evidence of ineffective assistance." (Citation and footnote omitted.) *Scott v. State*, 254 Ga. App. 728, 731 (4) (a) (563 SE2d 554) (2002).

5. Chester also claims the trial court erred in sentencing by failing to merge the counts of false imprisonment of two victims into the related kidnapping counts. The State, commendably, concedes that merger is proper as the same facts were used to prove each offense and, according to the State, the counts originally were indicted in the alternative. See *Massey v. State*, 265 Ga. 632, 633 (1) (458 SE2d 818) (1995), overruled on other grounds, *Lewis v. McDougal*, 276 Ga. 861, 862 n.1 (583 SE2d 859) (2003); compare *Hosley v. State*, 322 Ga. App. 425, 428-429 (3) (746 SE2d 133) (2013) (offenses did not merge when separate in time and proven with different facts). Those convictions and the sentences entered for them therefore must be vacated and the case remanded to the trial court for resentencing.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Barnes, P. J., and Branch, J., concur.*

11