**SECOND DIVISION**
**MILLER, P. J.,**
**BRANCH, J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 10, 2016**

# In the Court of Appeals of Georgia

A15A1636. MOON v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Sol Jason Moon was convicted on one count of aggravated child molestation (OCGA § 16-6-4 (c)), two counts of aggravated sexual battery (OCGA § 16-6-22.2 (b)),[1] three counts of child molestation (OCGA § 16-6-4 (a) (1)), and one count of sexual exploitation of children (OCGA § 16-12-100 (b) (8)). Moon filed a motion for new trial, which the trial court denied. On appeal, Moon contends that the evidence was insufficient to sustain his convictions as to certain counts; that a fatal variance existed between the indictment and the evidence

---

[1] The jury convicted Moon of a third count of aggravated sexual battery, but the trial court merged it into his conviction on aggravated child molestation for sentencing purposes. The jury found Moon not guilty on four additional counts of aggravated child molestation and one additional count of aggravated sexual battery.

presented at trial as to the offense of sexual exploitation of children; that his trial counsel rendered ineffective assistance; and that the trial court erred in failing to impose a split sentence on his child molestation and sexual exploitation of children convictions. We reject Moon's arguments that the evidence was insufficient or that he is otherwise entitled to a new trial based on a fatal variance or ineffective assistance of counsel, but nonetheless agree that the trial court erred in failing to impose a split sentence as mandated by Georgia law.

Upon review of a criminal conviction, we view the evidence in the light most favorable to the jury's verdict. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). We neither weigh the evidence nor assess the credibility of the witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the appellant guilty of each of the charged offenses beyond a reasonable doubt. See *Howard v. State*, 319 Ga. App. 621, 621 (737 SE2d 722) (2013).

So construed, the evidence adduced at trial shows that Moon's wife, "Mama Moon," ran a daycare center in their family home in which she watched approximately 12 to 15 children daily. Moon, who the children referred to as "Papa Moon," was generally home and had regular contact and interaction with them. While

2

at the Moon residence, the female children ordinarily played in the "girls' room" upstairs or the "playroom" in the garage.

N. M. attended daycare at Moon's residence for approximately five years, beginning when she was four or five years old. In May 2011, N. M.'s friend learned during a sleepover that Moon had been inappropriately touching N. M. in the playroom. The friend encouraged then 10-year-old N. M. to tell an adult and when N. M. refused, the friend disclosed the abuse to her mother. Ultimately, a school counselor contacted N. M.'s mother.

When questioned by her mother, N. M. immediately became emotional and disclosed the abuse she had suffered for years. N. M. further revealed that a second child, M. O., was often present during and subject to the same abuse by Moon.

M. O. was also ten years old and a long-time attendee of the daycare at the Moon residence. After learning about N. M.'s outcry, M. O.'s mother approached her and inquired as to whether she had been subjected to improper touching. M. O. confirmed that she had and named Moon as the perpetrator.

N. M. and M. O. were then interviewed separately by a criminal investigator specially trained in conducting forensic interviews of children. N. M. reported that

the abuse began when she was approximately four or five years old and continued until she was seven. Moon would take her into the playroom or the upstairs girls' room, where he would instruct her to pull down her pants and he would touch outside and inside her vagina. She recounted several instances during which Moon made her touch his penis, and that sometimes "pus" came out. M. O. was often present, and N. M. observed Moon abuse M. O. in the same manner.

M. O. gave a similar account, stating that the abuse began when she was approximately five years old, Moon would touch the outside and inside of her vagina, and sometimes it hurt. She further stated that Moon made her hold his penis numerous times and that "pee" occasionally came out.

Both girls stated that Moon threatened if they told anyone about the abuse, he would go to jail and Mama Moon would be poor and homeless. They each testified to the above events at trial.

During the course of her investigation, the criminal investigator learned of two additional children who had been sexually abused by Moon. R. S. and A. M., who were both seven years old at the time of Moon's arrest, had been attending daycare at Moon's residence for several years. R. S. reported that Moon had repeatedly touched the outside and inside of her vagina in the playroom and he made her touch

4

his penis. Moon also told R. S. that if she told anyone of the abuse, he would go to jail and Mama Moon would be forced to live on the streets. A. M. likewise reported that Moon placed his hand inside her panties and touched her vagina on more than one occasion while she attended daycare at his home. Both R. S. and A. M. also testified at trial.

A search of Moon's residence resulted in the seizure of his personal laptop computer and the discovery of an 8-millimeter cassette tape containing video footage that Moon had recorded on a hidden camera. The video cassette depicted two girls dressing and undressing while playing dress-up in the playroom, and Moon's voice can be heard as he set up the camera to record them. The girls, who were eighteen and twenty-two years old at the time of trial but were six and ten years old, respectively, in the video, testified that they had previously attended daycare at the Moon residence and were not aware that they were being recorded. The cassette tape was introduced at trial as similar transaction evidence.

A forensic search of Moon's laptop revealed images of child pornography that Moon had attempted to delete, as well as numerous visits to pornographic websites purporting to depict young women and girls, accessed with the user name "Papa Moon." An FBI agent testified that one of the children depicted in the recovered

5

images was known to be 11 years old at the time the image was taken. In addition to offering the testimony of the child victims, the State admitted copies of the pornographic images depicting children that had been retrieved from Moon's laptop computer.

1. Moon contends that the evidence was insufficient to support his conviction on several counts of the indictment.[2] We will address each in turn.

(a) Moon contends that the State failed to prove that he penetrated the vagina of N. M. and that such penetration lacked consent so as to establish the crime of aggravated sexual battery. We disagree.

The crime of aggravated sexual battery requires proof that an accused "intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b). A person's finger constitutes a "foreign object" for the purposes of the statute. See *Reinhard v. State*, 331 Ga. App. 235, 237 (1) (a) (770 SE2d 314) (2015).

---

[2] Moon also asserts that the evidence was insufficient to support his conviction on aggravated sexual battery as alleged in Count 6 of the indictment, but that count merged into his conviction on aggravated child molestation for sentencing purposes. Consequently, we need not consider this assertion. See *Rainey v. State*, 286 Ga. App. 682, 682 n.1 (649 SE2d 871) (2007).

N. M. told the investigator and also testified at trial that Moon stuck his fingers inside her vagina and that it felt uncomfortable. This testimony alone was sufficient to establish the element of penetration. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Aaron v. State*, 275 Ga. App. 269 (1) (620 SE2d 499) (2005) (victim's testimony that appellant "played around" inside her vagina provided sufficient evidence of aggravated sexual battery).

Moon further argues that the State failed to prove lack of consent by N. M. to the sexual contact. The Supreme Court of Georgia has recently held that the victim's age, alone, is insufficient to show a lack of consent to the crime of sexual battery because such a construction of the statute could potentially criminalize a wide range of apparently innocent conduct. See *Watson v. State*, __ Ga. ___, at *3 (2) (Case No. S15G0385, decided Sept. 14, 2015); see also OCGA § 16-6-22.1 (b).

Pretermitting whether the holding in *Watson* also extends to the crime of aggravated sexual battery, the State in this case presented other evidence, aside from N. M.'s age, to establish that she did not consent to Moon touching her vagina. Specifically, in addition to testifying to the countless times over a period of years that Moon touched her vagina , there was evidence that she was forced to touch Moon's penis and that Moon threatened her by saying that Mama Moon would be poor and

7

homeless if N. M. disclosed the abuse. Regardless of her age, the evidence was sufficient for any rational trier of fact to conclude that Moon's penetration of N. M.'s vagina was done without consent and for no lawful purpose, and constituted criminal conduct beyond a reasonable doubt. See OCGA § 16-6-22.2 (b); *Madison v. State*, 329 Ga. App. 856, 863 (1) (b) (766 SE2d 206) (2014) (affirming appellant's sexual battery convictions and holding that evidence that victim feared appellant was sufficient to authorize the jury to conclude that she did not consent to his improper touching).[3]

(b) Moon asserts that the evidence was insufficient to prove that he caused injury to M. O.'s vagina such as to prove the element of aggravated child molestation.[4] Again, we disagree.

---

[3] See also *Chester v. State*, 328 Ga. App. 888, 889 (1) (763 SE2d 272) (2014) ("It is well settled that lack of resistance, induced by fear, is not legally cognizable consent.") (citation and punctuation omitted); *Weldon v. State*, 270 Ga. App. 574, 575 (607 SE2d 175) (2004) (appellant's threats to punish the victim constituted sufficient evidence of force so as to support his conviction on aggravated sodomy).

[4] Although not enumerated as error, Moon challenges the sufficiency of the indictment, arguing that it is fatally defective because it alleged that he "caus[ed] injury to [M. O.'s] vagina," but failed to specify that it was a "physical injury." First, we note that Moon cannot expand his enumeration of error through argument in his brief. See *Riggs v. State*, 319 Ga. App. 189, 198 (5) (733 SE2d 832) (2012). Regardless, as set forth in Division 3, Moon's argument lacks merit.

"A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1). The crime advances to one of aggravated child molestation when the victim is physically injured. See OCGA § 16-6-4 (c). Significantly, a child's testimony that the molestation was painful is sufficient to prove the element of physical injury. See *Mangham v. State*, 291 Ga. App. 696, 697 (662 SE2d 789) (2008).

Here, M. O. testified that Moon inserted his finger into her vagina "[a] couple times a week" over a period of years and that "[i]t hurt." This testimony sufficiently proved that M. O. was physically injured while being sexually abused by Moon. See *Grooms v. State*, 261 Ga. App. 549, 550 (1) (583 SE2d 216) (2003) ("The victim's testimony indicating the molestation 'hurt' sufficed to prove the element of physical injury.") (footnote omitted); see also *Mangham*, supra, 291 Ga. App. at 697 (same).

(c) Moon also argues that the State failed to prove that he penetrated the vagina of R. S., or that such penetration lacked consent so as to prove aggravated sexual battery.

R. S. attended daycare at the Moon's residence beginning when she was two months old, and remained there until she was six years old. She testified that Moon inserted his finger inside her vagina on numerous occasions. This evidence was sufficient to prove that Moon penetrated R. S.'s vagina with a foreign object. See OCGA § 16-6-22.2 (b); *Reinhard*, supra, 331 Ga. App. at 237 (1) (a); *Aaron*, supra, 275 Ga. App. at 269 (1).

Just as with N. M., the evidence showed that, in addition to repeatedly touching her vagina over a period of years, Moon made R. S. touch his penis and threatened her by stating that Mama Moon would be forced to the streets if she told anyone. Accordingly, the evidence was overwhelming and any reasonable trier of fact need not rely on R. S.'s age alone to conclude that Moon acted without consent and for no lawful purpose. See OCGA § 16-6-22.2 (b); *Madison*, supra, 329 Ga. App. at 863 (1) (b).

2. Moon argues that there was a fatal variance between the indictment and the evidence presented at trial as to the offense of sexual exploitation of children. Specifically, Moon contends that a reversal of this conviction is required because the indictment alleged that he knowingly possessed and controlled "a photograph depicting a minor . . . under the age of 18 years, engaged in sexually explicit

10

conduct," but the evidence showed instead that the child pornography he possessed was in the form of digital images. We discern no error.

"Not every variance in proof from that alleged in the indictment is fatal." (Citation and punctuation omitted.) *Wegman-Fakunle v. State*, 277 Ga. App. 198, 200 (2) (626 SE2d 170) (2006). The fundamental test is to determine whether (1) the accused was definitely informed of the charges against him so as to enable him to present his defense and not to be taken by surprise, and (2) the accused was adequately protected against another prosecution for the same offense. See *Delacruz v. State*, 280 Ga. 392, 396 (3) (627 SE2d 579) (2006). Consequently, "[t]he true inquiry . . . is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused." (Citation and punctuation omitted.) Id. Only in the latter cases is the variance considered fatal. Id.

Moon was not subject to either of these dangers when he was indicted for possessing "a photograph" depicting a minor child engaged in sexually explicit conduct, rather than a "digital image" depicting the same. OCGA § 16-12-100 (b) (8) provides that "[i]t is unlawful for any person knowingly to possess or control *any material* which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." (Emphasis added.). Digital images are encompassed

11

within the scope of the statute. See *State v. Al-Khayyal*, 322 Ga. App. 718, 723 (744 SE2d 885) (2013) (holding that data capable of generating images of a minor engaged in sexually explicit conduct constitutes "*material*" under OCGA § 16-12-100 (b) (8), regardless of whether a machine or electronic device is required to actually view the images); see also *State v. Brown*, 250 Ga. App. 376, 379 (1) (551 SE2d 773) (2001).

The allegations of the indictment sufficiently apprised Moon of the charge against him and did not mislead him in any way. See *Delacruz*, supra, 280 Ga. at 396 (3). Moreover, Moon is in no danger of a future prosecution for the same offense, particularly in light of the fact that the prosecutor made copies of and tendered into evidence screen shots of the pornographic images that formed the basis of the charge. Since Moon has failed to prove that his substantial rights were affected by the wording of the indictment, the alleged variance was not fatal. See generally *Flores v. State*, 298 Ga. App. 574, 578 (2) (680 SE2d 609) (2009) (no fatal variance when indictment alleged that appellant touched the victim's private area with his penis and the evidence showed only that he touched it with his hand since appellant was not misled or subject to further prosecution); *Smith v. State*, 210 Ga. App. 634, 635 (2) (d) (437 SE2d 333) (1993) (no fatal variance between indictment alleging aggravated

child molestation by penetration of the victim's anus and evidence at trial which showed no penetration had been achieved).

We further note that the evidence that Moon possessed digital images stored on his computer of minor children engaged in sexually explicit conduct was sufficient to sustain Moon's conviction on the offense of sexual exploitation of children as indicted. See *Al-Khayyal*, supra, 322 Ga. App. at 723 (holding evidence that appellant "possessed a computer that served as the storage medium for data files capable of generating visual depictions of minors engaged in sexually explicit conduct" supported his conviction for sexual exploitation of children pursuant to OCGA § 16-12-100 (b) (8)).

3. Moon argues that the trial court erred in denying his motion for new trial on the basis that his trial counsel rendered ineffective assistance. We disagree.

To succeed on a claim for ineffective assistance of trial counsel, Moon must establish both that his trial counsel's performance was deficient and that the deficient performance prejudiced his defense. See *Campos v. State*, 263 Ga. App. 119, 120 (587 SE2d 264) (2003); see also *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LEd2d 674) (1984).

Moon specifically challenges his counsel's failure to file a general demurrer to the indictment as to the offense of aggravated child molestation because the State failed to allege that he "physically" injured the child victim. See OCGA § 16-6-4 (c) ("A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child . . . ."). "The true test of the sufficiency of an indictment to withstand a general demurrer . . . is found in the answer to the question: Can the defendant admit the charge as made and still be innocent? If he can, the indictment is fatally defective." (Citation and punctuation omitted.) *State v. Meeks*, 309 Ga. App. 855, 856 (711 SE2d 403) (2011).

Although a physical injury to the victim is an essential element of the crime of aggravated child molestation, the actual use of the word "physical" is not essential when the allegations of the indictment otherwise allege an injury that is, by its very nature, a physical one. The indictment charged that Moon committed aggravated child molestation "by inserting [his] finger . . . into the vagina of [M. O.] . . . causing injury to [M. O.'s] vagina." We fail to see how injury to a vagina could be anything other than physical. Moreover, as set forth in Division 1 (b), settled law makes clear that a victim's pain during the act of molestation constitutes a physical injury. See *Mangham*, supra, 291 Ga. App. at 697.

14

Since Moon could not have admitted the facts charged and still be innocent of the crime of aggravated child molestation, the indictment was sufficient to withstand a general demurrer. See *Raybon v. State*, 309 Ga. App. 365, 367 (710 SE2d 579) (2011). It follows that Moon has failed to carry his burden of proving that his trial counsel's failure to file the demurrer constituted deficient performance. See *Burke v. State*, 316 Ga. App. 386, 389 (1) (a) (729 SE2d 531) (2012) ("Failure to make a meritless or futile . . . motion cannot be evidence of ineffective assistance.") (punctuation and footnote omitted).

4. Finally, Moon argues that the trial court erred by failing to impose a split sentence for his convictions on three counts of child molestation and one count of sexual exploitation of children, when the trial court sentenced him to 20 years to serve on each count.[5] OCGA § 17-10-6.2 (b) provides that "any person convicted of a sexual offense shall be sentenced to a split sentence which shall include the minimum term of imprisonment specified in the Code section applicable to the offense . . . and such sentence shall include, in addition to the mandatory imprisonment, an additional probated sentence of at least one year." As conceded by

---

[5] The respective 20-year sentences were to run concurrently with Moon's consecutive life sentences for aggravated child molestation and aggravated sexual battery.

the State , the "plain and unambiguous" text of the statute mandates that Moon receive a split sentence as to each count of child molestation and sexual exploitation of children for which he was convicted. *Clark v. State*, 328 Ga. App. 268, 269 (1) (761 SE2d 826) (2014) (statute's requirement of a split sentence is plain and unambiguous); see *New v. State*, 327 Ga. App. 87, 108 (755 SE2d 568) (2014) (holding trial court failed to impose the mandatory split sentence on each count of child molestation and sexual exploitation of children). We therefore vacate Moon's sentence and remand this case to the trial court with specific instructions to resentence Moon consistent with OCGA § 17-10-6.2 (b).

*Judgment affirmed in part, vacated in part, and case remanded for resentencing. Branch, and Rickman, JJ., concur*.