**FIFTH DIVISION
MCFADDEN, C. J.,
RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**April 8, 2021**

# In the Court of Appeals of Georgia

A21A0227. BUWEE v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Ebenezer Buwee guilty of aggravated child molestation and child molestation, and the trial court denied his motion and amended motions for new trial. Buwee failed to timely file a notice of appeal from the trial court's order, and he moved for an out-of-time appeal, which the trial court granted. On appeal, Buwee argues that the evidence was insufficient to support his convictions and that the trial court erred by striking a juror over his objection. For the following reasons, we affirm Buwee's convictions.

> When we consider the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and inquire only whether any rational trier of fact might find beyond a reasonable doubt that the defendant is guilty of the crimes of which he was convicted. Under this review, we must put aside any questions about conflicting

evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact.

*Jones v. State*, 354 Ga. App. 568, 571 (1) (841 SE2d 112) (2020) (citations and punctuation omitted). Thus, the jury's verdict will be upheld as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case." *Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011) (citation and punctuation omitted).

So viewed, the evidence shows that when A. D. was 15 years old, she lived with her grandmother, aunt, uncle, brother, and Buwee, who was dating her aunt. She had recently gotten her own room after another aunt and a cousin moved out, but Buwee kept suits and shoes in the closet of that bedroom. In May 2017, A. D. awoke around 2:00 a.m. when Buwee entered her bedroom. According to A. D., Buwee

> came in the room, and he went to the closet, and I believe he was putting his stuff up and then he stood over me and then -- he stood over me and then after a while, he started touching me like feeling on my body and then -- and then he slid his hand down my pants and inserted his fingers in my vagina.

A. D. testified that Buwee first touched her buttocks with his hand, and she froze. Buwee then moved his hand around to her front, put them inside her panties, and

2

inserted his fingers into her vagina, which caused pain and discomfort. At this point, A. D. "shot up and started running downstairs."

A. D. was panicking, crying, and trying to tell her grandmother and aunt what had happened. She eventually calmed enough to tell them, and then called her cousin and told her cousin and aunt what had happened. Her brother told her to call the police, but her grandmother and aunt said they could resolve the problem. A. D., in fact, did call the police, but A. D. was upstairs when the police came, and her grandmother and aunt would not let A. D. talk to the police. The police left, and Buwee remained at the house, so A. D. locked her bedroom door and did not sleep because she was so scared. She spent the next week sleeping at another aunt's house until Buwee left her grandmother's house.

The day after the incident occurred, A. D. spoke with her counselor at school and told her what had happened. School officials called the police, who came to the school, spoke with A.D., and took her for a forensic medical exam. The sexual assault nurse testified that she examined A. D. within 12 hours of the assault. A. D. recounted the same version of events during her exam and told the nurse that she experienced pain. In addition, the nurse found a laceration in A. D.'s genitals consistent with the abuse described by A. D., and pictures of the laceration were presented to the jury.

A detective conducted a video-recorded interview of A. D. at the Gwinnett Sexual Assault Center, and it was played for the jury.

Buwee testified in his own defense and explained that he had gone into A. D.'s bedroom to get some clothes from the closet, and on the way he stumbled and fell. After he fell, he jumped up, and he saw someone run out of the room. He denied touching A. D. or any other child in a sexual manner.

1. Buwee first asserts that the evidence was insufficient to support his convictions. Specifically, he argues that reasonable doubt existed regarding the molestation because a number of adults were present in the house when the molestation occurred, there was a lack of physical evidence, and the family was not alarmed enough to speak with police. We disagree.

"A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy." OCGA § 16-6-4 (c). "Significantly, a child's testimony that the molestation was

4

painful is sufficient to prove the element of physical injury." *Moon v. State*, 335 Ga. App. 642, 646 (1) (b) (782 SE2d 699) (2016).

Here, the evidence was sufficient for the jury to find Buwee guilty beyond a reasonable doubt of child molestation for touching A. D.'s buttocks and aggravated child molestation for inserting his fingers into her vagina and hurting her, as alleged in the indictment. First of all, "the evidence of the victim alone is sufficient to authorize the jury to find a defendant guilty of child molestation. No requirement exists that this testimony be corroborated." *Reyes v. State*, 356 Ga. App. 346, 347 (1) (847 SE2d 25) (2020) (citation and punctuation omitted); see also OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."). Accordingly, A. D.'s testimony that Buwee touched her buttocks and hurt her when he inserted his fingers into her vagina alone was sufficient evidence for a rational trier of fact to find Buwee guilty of child molestation and aggravated child molestation. *Reyes*, 356 Ga. App. at 347-348 (1); *Moon*, 335 Ga. App. at 646 (1) (b). In addition, the State presented additional evidence to support the charges, including evidence regarding A. D.'s description of the incident to others, testimony of the sexual assault nurse that she discovered a laceration in A. D.'s vagina consistent with A. D.'s

5

account of the events, photographs of the laceration, and the detective's video interview of A. D.

Despite Buwee's assertions that he simply stumbled and did not commit the charged offenses, it was the sole province of the jury to judge the credibility of the witnesses, resolve any conflicts in the evidence, and determine whether Buwee committed the charged act with the requisite intent. See *Reyes*, 356 Ga. App. at 347 (1); *Burke v. State*, 316 Ga. App. 386, 390 (2) (729 SE2d 531) (2012) (whether the requisite intent for child molestation exists is a question of fact, which may be proved inferentially and is to be determined by the fact finder in light of the totality of the circumstances). The trial court did not err in denying Buwee's motion for new trial on this ground.

2. Buwee next asserts that the trial court erred by striking a prospective juror for cause over his objection. We disagree.

Under OCGA § 15-12-164 (a), a prospective juror may be set aside for cause if he (1) has formed and expressed any opinion in regard to the guilt or innocence of the accused; (2) has any prejudice or bias either for or against the accused; (3) can not be impartial between the state and the accused; or (4) is conscientiously opposed to capital punishment. In addition,

6

[t]he court shall also excuse for cause any juror who from the totality of the juror's answers on voir dire is determined by the court to be substantially impaired in the juror's ability to be fair and impartial. The juror's own representation that the juror would be fair and impartial is to be considered by the court but is not determinative.

OCGA § 15-12-164 (d).

"Whether to strike a juror for cause is within the discretion of the trial court and the trial court's rulings are proper absent some manifest abuse of discretion." *Sallie v. State*, 276 Ga. 506, 508 (2) (578 SE2d 444) (2003) (citation omitted). "We view the record as a whole to determine support for the trial court's findings, and we pay deference to the trial court's resolution of any conflicts or equivocations in the prospective juror's voir dire responses as well as its ultimate determination of a juror's qualification." Id.

Appellate judges, after all, have only a cold record from which to size up a prospective juror, and they are in no position to assess whether a prospective juror spoke with assurance or uncertainty, enthusiasm or hesitation, candor or guile. On the other hand, a trial judge is uniquely positioned to evaluate whether a prospective juror can render an impartial verdict, considering that the trial judge can observe a prospective juror in person and take account of her demeanor and countenance, not just the words that she speaks.

*Edenfield v. State*, 293 Ga. 370, 379-380 (7) (744 SE2d 738) (2013), overruled in part on other grounds by *Willis v. State*, 304 Ga. 686, 706 n. 3 (11) (a) (820 SE2d 640) (2018) (citation and punctuation omitted).

Here, the record shows that, during voir dire, Juror #21 indicated that he has a depression problem and tries to stay away from stress because of health issues. His father died at any early age of cardiac arrest, and doctors have told the juror to stay away from stress that could affect his health. In fact, the juror indicated that he takes medication for his issues, had a stress test scheduled for the following week, and believed that being seated on the jury would detrimentally affect his health. According to the juror,

> [t]o be honest with you, I try to stay away from any kind of discussion if there is something like any violence or any -- anything that put me at stress for me, I try to stay away from it. It automatically affects my health. That's why I don't get involved in any of that stuff.

The juror further stated that he did not presume that Buwee was guilty or innocent, but because the case involved a child, he believed it necessarily would involve more stress.

After voir dire, the State requested that the trial court strike Juror #21 for cause based on the juror's indication that he suffered from depression and wanted to avoid

the stress of a trial. Buwee's attorney objected on the ground that a trial is not so overbearing and stressful that it should disqualify the juror. The trial court excused the juror for cause, stating,

> It's my concern is that he's apparently decided to tune himself out, that he doesn't intend to pay attention to anything that might cause him some stress. The implication of his answers to these questions was he was going to avoid stress by simply ignoring the evidence that was presented. So I am going to go ahead and excuse Juror Number 21 for cause.

In addition, in its order denying Buwee's motion for new trial, the court noted that it recalled

> Juror 21 and the parties' voir dire of him. Juror 21 expressed hesitation over sitting on the jury due to concerns over his health and his stress level. The Court further observed Juror 21 in person and concluded that he appeared either unwilling or unable to give the case the attention needed to render a just verdict.

Buwee argues on appeal that the trial court should not have excused Juror #21 for cause because the juror's responses did not show that he could not be fair and impartial. We disagree. Although Juror #21 may not have expressly stated that he could not be fair and impartial, the trial court concluded that because of the juror's health problems and his concern over the stress involved in a child molestation case,

9

Juror #21 likely would have ignored the evidence presented to protect his health, and such action would not be fair to either party. See generally *Sallie*, 276 Ga. at 510-511 (5) (no abuse of discretion in dismissing prospective juror who had been previously treated for schizophrenia and other mental health problems, exhibited bizarre behavior while waiting to be questioned on voir dire, and rambled when answering questions). We defer to the trial court's ability in this case to observe prospective Juror #21 in person and take account of his demeanor and countenance, not just the words that he spoke. See *Edenfield*, 293 Ga. at 379-380 (7). Reviewing the record as a whole in this case, we find no abuse of discretion in the trial court's decision to strike prospective Juror #21 for cause.

*Judgment affirmed. McFadden, C. J., and Rickman, P. J., concur*.