**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 28, 2016**

# In the Court of Appeals of Georgia

A16A0868. GERBERT v. THE STATE.

PETERSON, Judge.

Following a jury trial, Alexander Sean Gerbert was convicted of aggravated sodomy and five counts of sexual exploitation of children based on his possession of child pornography. Gerbert appeals from the denial of his motion for new trial and argues that (1) the trial court erred in denying his motion to suppress evidence found on computers and a phone that were seized from his residence, (2) the evidence was insufficient to support his convictions, (3) the trial court erred in admitting evidence of other acts, and (4) he received ineffective assistance of trial counsel in several respects.

One of Gerbert's sufficiency challenges calls us to decide whether OCGA § 16-12-100 (b)(8), which criminalizes the knowing possession of child pornography,

requires the State to prove that Gerbert knew the images he possessed depicted minors. We conclude that it does. Because the State failed to present sufficient evidence to prove that Gerbert knew that one of the images of child pornography depicted a minor, we reverse one count of sexual exploitation of children (Count 11). We reject Gerbert's other arguments and affirm his remaining convictions.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the verdict, and the appellant no longer enjoys a presumption of innocence. *Heatherly v. State*, 336 Ga. App. 875, 875 (785 SE2d 431) (2016). So viewed, the evidence shows that Gerbert moved in with Maureen Taylor and her three daughters, A. W., B. T., and C. W, before the couple married in 2003. One night, when B. T. was about eight or nine years old, she awoke in her bedroom to find that Gerbert was licking her genital area. Gerbert immediately ran downstairs when B. T. woke up. B. T. did not report the incident to her mother until September 21, 2010, about two years after it occurred and shortly after Gerbert moved out of the house, because her mother was not home at the time of the event and B. T. was scared of Gerbert.

Almost immediately after B. T.'s outcry, Maureen took B. T. to her sister's house, where Maureen and her sister both questioned B. T. B. T. nodded yes when

asked if Gerbert put his face "down there," prompting Maureen's sister to call the police. B. T. repeated the allegations of abuse to the police.

A police investigator interviewed A. W., who alleged that Gerbert had also sexually abused her and had taken sexually explicit images of her. In addition to alleging that Gerbert had touched her private parts when she was 12 or 13 years old, A. W. alleged that Gerbert became aware that she was addicted to methamphetamine when she was 15 years old. She alleged that Gerbert exploited her addiction by offering her money in exchange for sexual favors, including taking nude pictures of her with a digital camera. A. W. later found these photographs on Gerbert's blue Toshiba laptop and confronted Gerbert about them. Gerbert told A. W. that he would never delete the images.

After his interview of A. W., the investigator sought and obtained a warrant to search Gerbert's residence. During a search of his residence, police officers recovered two blue Toshiba laptops and an iPhone belonging to Gerbert. A forensic examination of the seized laptops recovered no data because they had been corrupted. Sexually explicit photographs matching the descriptions that A. W. had given to the investigator were found on Gerbert's iPhone in a software application called

"Ractor," which creates hidden locations for storing files. Gerbert was subsequently arrested.

Upon learning of Gerbert's arrest, a former coworker of Gerbert's contacted the Coweta County Sheriff's Office. The former coworker reported that he had a computer that Gerbert had asked him to store after Gerbert left their former workplace. The former coworker gave the computer to the investigator in June 2012, and testified that no one accessed or used the computer at any time while it was in his possession.

The investigator had that computer forensically examined. More sexually explicit images, including those of an unrelated young woman, S. P., were found on the computer. Sexually explicit images of S. P. were also found on Gerbert's iPhone. S. P. testified that when she was 17 years old, she took the photographs and sent them to her boyfriend. She testified that she did not know Gerbert.

Gerbert was charged with various child sexual abuse offenses. He was convicted of aggravated sodomy for performing a sexual act on B. T. when she was less than 10 years old (Count 3) and five counts of sexual exploitation of children for possessing four different sexually explicit images of A. W. (Counts 6-9) and one image of S. P. (Count 11). The jury could not reach a verdict on the remaining two

4

counts of child molestation, one count of aggravated sexual battery, one count of incest, and one other count of sexual exploitation of children, and the State nolle prossed those charges. Gerbert now appeals.

1. Gerbert argues that the trial court erred in denying his motion to suppress, because A. W.'s information regarding the images of child pornography was stale, and the investigator's search warrant application did not particularly describe the items to be seized. We disagree.

A magistrate may issue a search warrant only when the circumstances set forth in the affidavit establish probable cause that contraband or evidence of a crime will be found in a particular place. *State v. Palmer*, 285 Ga. 75, 77-78 (673 SE2d 237) (2009). On appeal, we must determine whether the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrant. *Amica v. State*, 307 Ga. App. 276, 278 (1) (704 SE2d 831) (2010). "[D]oubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper." *Sullivan v. State*, 284 Ga. 358, 361 (2) (667 SE2d 32) (2008) (citations and punctuation omitted).

(a) *Staleness*

The information on which the warrant issued was not stale. In the 2011 warrant affidavit, the investigator stated that A.W. reported that Gerbert had taken nude photographs of her when she was 15, approximately 2006 or 2007. Gerbert argues that the passage of time between Gerbert's alleged creation of illegal images in 2006 or 2007 and the 2011 warrant affidavit rendered the information contained in the affidavit stale. But although a magistrate "must consider time as an element of probable cause when issuing a warrant, the mere passage of time does not equate with staleness." *Copeland v. State*, 273 Ga. App. 850, 853 (1) (a) (616 SE2d 189) (2005) (punctuation and footnotes omitted). To determine whether the information relied upon in obtaining a search warrant is stale, a judge should determine whether the circumstances indicate a reasonable probability that the conditions referred to in the affidavit continue to exist at the time of the issuance of the search warrant. *Tarvin v. State*, 277 Ga. 509, 511 (4) (591 SE2d 777) (2004).

Here, the investigator stated in his warrant affidavit that he would search a blue Toshiba laptop and all other media storage devices located at Gerbert's residence because A. W. reported that Gerbert had taken nude pictures of her and had said he would never delete them. The investigator also stated that images and digital

6

information placed on a computer could be retrieved even if attempts had been made to delete or erase such data.

We have held that media capable of storing sexually explicit material, such as computers or hard drives, are unlikely to be affected by the passage of time. *See Birkbeck v. State*, 292 Ga. App. 424, 433-34 (6) (665 SE2d 354) (2008), *disapproved on other grounds by State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010); *Buckley v. State*, 254 Ga. App. 61, 62 (561 SE2d 188) (2002). *See also United States v. Lovvorn*, 524 Fed. App'x 485, 487 (11th Cir. 2013) ("Files on a computer are less likely than other types of contraband to disappear over time[.]"). Because the nature of the files sought meant that it was not likely to have disappeared with the passage of time, and there was evidence that Gerbert intended to retain the files,[1] the warrant was not based on stale information.

(b) *Description of items to be seized*

The search warrant affidavit adequately described the items to be seized. The Fourth Amendment to the United States Constitution commands that "no Warrants shall issue . . . [without] particularly describing . . . the . . . things to be seized." U.S.

---

[1] This opinion should not be read to require such evidence to defeat a staleness argument.

7

Const. Amend. IV. In considering whether a search warrant affidavit adequately describes the items to be seized, we must determine whether the description of the item sought is sufficient to enable "a prudent officer executing the warrant to locate it definitely and with reasonable certainty." *Bishop v. State*, 271 Ga. 291, 294 (519 SE2d 206) (1999).

In the warrant affidavit, the investigator stated that he wanted to search the blue Toshiba laptop, other computers, hard drives, cell phones, CDs and DVDs, SD cards, memory sticks, and other media storage devices for images of child molestation. This description of the items to be seized was sufficient. *See Smith v. State*, 274 Ga. App. 106, 110 (3) (616 SE2d 868) (2005) (holding that search warrant affidavit sufficiently described items to be searched when it sought evidence of child molestation and sexual exploitation of children, including, but not limited to, pictures, computers, and videos); *Tyler v. State*, 176 Ga. App. 96, 97 (1) (335 SE2d 691) (1985) (finding that search warrant description authorizing search for "pornographic material which is in violation of Georgia law" sufficiently described items to be seized). Because Gerbert's challenges to the search warrant affidavit fail, the trial court did not err in denying his motion to suppress.

2. Gerbert argues that the evidence is insufficient to support his convictions. We agree with respect to one count related to possession of child pornography, and disagree as to all the others.

(a) *Aggravated Sodomy*

"A person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person or when he or she commits sodomy with a person who is less than ten years of age." OCGA § 16-6-2(a)(2). "Sodomy" is committed when a person "performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2(a)(1).

Here, the aggravated sodomy count alleged that Gerbert put his mouth on B. T.'s sex organs, and that she was less than 10 years old at the time. Gerbert does not dispute that he committed the act of sodomy, but argues that the aggravated circumstances of the offense were not proven because the State introduced no testimony establishing B. T.'s age at the time of the offense. Contrary to Gerbert's argument, the evidence shows that B. T. was born on September 16, 1999, she told her mother on September 21, 2010 that Gerbert had put his mouth on her vagina, and she waited two years to report the sexual offense to her mother. B. T.'s clinical

psychologist testified at trial that "[B. T.] told me that when she was eight or nine that her stepfather had come into her room and had put his mouth on her vaginal area[.]" She further testified:

> I asked her – one of the things that we do in terms of trying to establish time frames is to think about what other things might trigger a memory that would anchor it in time. She did tell me that she remembered the name of her second grade teacher, that that was the teacher that she had at the time, which would be consistent with her being eight or nine, because she had failed a grade.

Based on this evidence, the jury was authorized to find that B. T. was less than 10 years of age when Gerbert committed the act of sodomy on her and, therefore, to find Gerbert guilty of aggravated sodomy.

(b) *Sexual Exploitation of Children*

A person commits the offense of sexual exploitation of children in the manner for which Gerbert was convicted when he or she knowingly possesses "any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." OCGA § 16-12-100(b)(8). The statute defines a minor as a person under the age of 18 years. OCGA § 16-12-100(a)(1).

(i) *Images of A. W.*

In challenging his four sexual exploitation of children convictions related to images of A. W., Gerbert argues that he did not knowingly possess the sexually explicit images of A. W. His argument is without merit.

Knowledge and possession may be proved, like any other fact, by circumstantial evidence, including the "words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." *Freeman v. State*, 329 Ga. App. 429, 432 (1) (765 SE2d 631) (2014) (footnote omitted).

Here, A. W. testified that Gerbert used a digital camera to take pictures of her engaged in sexually explicit conduct when she was 15 or 16 years old, and that she subsequently found these pictures on his Toshiba computer. Although these images were not found on Gerbert's laptop, Gerbert told A. W. that he would never delete the images, and the images were found in hidden folders on Gerbert's iPhone. The hidden file locations on Gerbert's phone were created by the Ractor application, the purchase of which was associated with one of Gerbert's email accounts. The evidence showed that the Ractor application allows a user to retrieve files even if the phone is lost or damaged. Based on this evidence, the jury was authorized to conclude that Gerbert

took the sexually explicit photographs of A. W., transferred the images to different storage devices, and placed them in location that only he could access.

Gerbert did not dispute that his electronic devices contained sexually explicit photographs, but he claimed that other people were responsible for placing them there. Gerbert's Toshiba laptop had been stolen by A. W.'s boyfriend, although it was subsequently recovered, and Gerbert claimed that A. W.'s boyfriend had taken the pictures and had placed them on the Toshiba laptop. Gerbert also stated he and his wife "got[] onto the girls a lot about" the nude photographs on his computers, and he claimed his step-daughters had transferred the images to multiple devices. Gerbert also claimed that his wife used his phone to purchase the Ractor application and transferred sexually explicit images of females, including those of her daughter, to his phone. Gerbert opined that his wife was seeking to put damaging evidence on his phone that would result in a payoff during a divorce. Although Gerbert blamed other people for the presence of sexually explicit images on his devices, he never testified that he attempted to delete the images, and the jury was authorized to reject his explanation for his possession of the images. *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses

12

and to resolve any conflicts or inconsistencies in the evidence.") (citation and punctuation omitted).

Gerbert also relies upon *Barton v. State*, 286 Ga. App. 49 (648 SE2d 660) (2007), to argue that his convictions should be reversed. In *Barton*, this Court reversed the defendant's conviction for sexual exploitation of children because the State failed to show that the defendant, who had images of child pornography located in his computer's cache, took some affirmative action to save or download those images to his computer or had knowledge that his computer automatically saved those files. *Id.* at 52. Unlike the defendant's claims in *Barton*, Gerbert knew his computer possessed images of child pornography, and *Barton* does not support Gerbert's defense that other people were responsible for this act. As more fully explained in *New v. State*, 327 Ga. App. 87, 92-93 (1) (755 SE2d 568) (2014), *Barton* is limited to sufficiency challenges to convictions for present possession of child pornography where the only evidence of present possession is the presence of temporary internet files on a suspect's computer. The nude images of A. W. were not temporary and were not retrieved from the internet. The evidence shows that Gerbert created them. Thus, *Barton* does not apply, and even if it did, the evidence is more than sufficient to defeat a *Barton* claim.

Based on evidence that the nude images of A. W. were found on multiple devices belonging to Gerbert and were placed on his phone in a folder that the jury could conclude was meant to be accessible only to Gerbert, the jury was authorized to conclude that he knowingly possessed the nude images of A. W. *See State v. Al-Khayyal*, 322 Ga. App. 718, 724 (744 SE2d 885) (2013) (defendant's use of computers is a relevant consideration in determining whether he had requisite knowledge of child pornography images). Thus, his four convictions for sexual exploitation of children related to A. W. are affirmed.

(ii) *Images of S. P.*

Gerbert does not dispute possessing images of S. P. engaged in sexually explicit conduct, but argues that the State did not prove that he knew she was a minor at the time the pictures were taken and, therefore, did not establish a violation of OCGA § 16-12-100(b)(8). We agree.

Although the parties both assume that OCGA § 16-12-100(b)(8) requires the State to prove that a defendant knew the charged image depicted a minor, we have identified no decision of our Court or our Supreme Court that has explicitly decided that issue. We do now, and conclude that the State must prove the defendant's knowledge that the image depicted a minor. Because the State did not prove that

14

Gerbert knew that the image charged in Count 11 depicted a minor, we reverse that conviction.

OCGA § 16-12-100 defines the crime of sexual exploitation of children in eight different ways. *See* OCGA § 16-12-100(b)(1)-(8). Possession of child pornography is defined in OCGA § 16-12-100(b)(8), which provides that "[i]t is unlawful for any person knowingly to possess or control any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." We have made it very clear that this paragraph requires the State to prove that the defendant knowingly possessed the illicit materials. *See, e.g.*, *State v. Al-Khayyal*, 322 Ga. App. 718, 721-22, 724 (744 SE2d 885) (2013); *Barton*, 286 Ga. App. at 51-52. And both our Court and our Supreme Court have made it clear that one of the other seven definitions of the crime requires the defendant to know that the victim was a minor. *See Phagan v. State*, 268 Ga. 272, 277-78 (3) (c) (486 SE2d 876) (1997) (holding that OCGA § 16-12-100(b)(1) requires the State to prove that the defendant knew the person involved in the sexual offense was a minor); *Berry v. State*, 281 Ga. App. 424, 425 (636 SE2d 150) (2006) (applying *Phagan* holding).[2] But our review of the

---

[2] In the parties' only citation of authority on this question, Gerbert cites *Berry* as holding generally that OCGA § 16-12-100 requires the State to prove that a defendant knew the age of the minor. But *Berry*, like *Phagan*, considered only the

15

caselaw does not reveal any decision from our Court or our Supreme Court expressly addressing whether the crime defined in Paragraph (b)(8) requires the State to prove a defendant's knowledge that an illicit image depicted a minor.

Two decisions of our court have considered challenges to convictions for violation of Paragraph (b)(8) on the ground that the State failed to prove the defendant knew the age of the individuals pictured in the charged images. *See Abernathy v. State*, 278 Ga. App. 574, 577 (1) (630 SE2d 421) (2006) (appellant argued "that the state failed to prove that the individuals pictured in the photographs at issue were minors or that he had knowledge that they were minors"); *Henderson v. State*, 320 Ga. App. 553, 555 (1) (740 SE2d 280) (2013) (appellant argued that "the State failed to prove beyond a reasonable doubt his knowledge of the ages of the children depicted in the movies"). But in neither case did we distinguish between proof of the child's age and proof of the defendant's knowledge of that age; rather, we resolved the appellant's challenge based on whether the evidence was sufficient simply to prove the children depicted in the images were minors. *See Abernathy*, 278 Ga. App. at 577 (1) (holding that "[i]t is axiomatic that the state bore the burden of

crime defined in OCGA § 16-12-100(b)(1).

16

establishing each element of this crime, and thus the state was required to prove that the persons depicted in the photographs were under 18 years of age," and reversing convictions because there was no evidence of age); *Henderson*, 320 Ga. App. at 555 (1) (quoting the *Abernathy* language that "the State was required to prove that the persons depicted in the photographs were under 18 years of age," and holding that the jury was authorized to conclude that the children depicted in movie files found on the defendant's computer were under the age of 18 after it viewed the movies of the small children, "who as the trial court concluded, were clearly prepubescent") (punctuation omitted).

It is unsurprising that we did not focus on the issue of the defendant's knowledge in *Abernathy*[3] or *Henderson*, because in both cases, the images themselves

---

[3] We must confess that we are not sure what to make of our suggestion in dicta in *Abernathy* that expert testimony could provide sufficient evidence to establish the defendant's knowledge in cases involving post-pubescent teenagers, while cases involving images of prepubescent children could be determined without expert testimony. *Abernathy*, 278 Ga. App. at 578 (1). Expert testimony is obviously relevant to proof of the age of the person in the image. *Id.* But it is not obviously relevant to a defendant's knowledge of the age of the person in the image. If the age of the person in an image is ambiguous enough to require expert testimony, it is not clear that the expert's explanation of the image would be sufficient to prove a defendant's knowledge unless there is evidence that the defendant had knowledge similar to the substance of the expert testimony. But what *Abernathy*'s dicta means, and the extent to which it matters, is another issue for another day.

17

were the only evidence of age. When the State's evidence of the child's age is the the images themselves, we would expect that a sufficiency challenge to the State's proof of age would almost always be resolved identically to a sufficiency challenge to the State's proof of the defendant's knowledge of age. If the jury can conclude from the image that the person depicted there was a minor, the jury could also conclude that the defendant who possessed the image had the same knowledge, and vice versa.

Regardless of whether we answered this question in *Abernathy* or *Henderson*, we explicitly answer it here: OCGA § 16-12-100(b)(8) requires the State to prove that the defendant knew the person depicted in the image was under the age of 18. Our conclusion is based on the Georgia Supreme Court's decision in *Phagan*, where the Supreme Court held that the State had to prove the defendant had knowledge that the individual was a minor to sustain a conviction under OCGA § 16-12-100(b)(1). 268 Ga. at 277-78 (3) (c). In *Phagan*, the Supreme Court's primary focus was on the text and nature of the scienter requirement in Paragraph (b)(1): "[i]t is unlawful for any person knowingly to employ, use, persuade, induce, entice, or coerce any minor to engage in or assist any other person to engage in any sexually explicit conduct for the purpose of producing any visual medium depicting such conduct." OCGA § 16-12-100(b)(1). That scienter requirement is nearly identical to the knowledge language in

Paragraph (b)(8): "It is unlawful for any person knowingly to possess or control any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." OCGA § 16-12-100(b)(8). Our Supreme Court concluded that the scienter requirement of Paragraph (b)(1) applied to all the elements of the crime. In doing so, it rested analysis in part on concern by the Supreme Court of the United States about the constitutional problems that would arise from the lack of a scienter requirement in a federal child pornography statute similar to the sexual exploitation of children statute at issue here. *Phagan*, 268 Ga. at 277-78 (3) (c) ("[S]erious constitutional doubts would be raised by a statute completely bereft of a scienter requirement as to the age of the performers depicted in the child pornography.") (punctuation omitted) (*citing United States v. X–Citement Video*, 513 U.S. 64, 78 (115 S. Ct. 464, 130 LE2d 372) (1994))[4]. In a subsequent case, citing *Phagan*, our Supreme Court observed that when criminal statutes introduce the elements of a crime with the word "knowingly," the statute "is ordinarily construed as applying that word

---

[4] In *X-Citement Video*, the United States Supreme Court interpreted the term "knowingly" found in 18 U.S.C. § 2252, a federal statue criminalizing certain activities involving the sexual exploitation of minors, and concluded that the scienter requirement applied to the sexually explicit nature of the material and to the age of the performers. 513 U.S. at 68–79.

to each element of the offense." *Scott v. State*, 295 Ga. 39, 40 (1) (757 SE2d 106) (2014) (quotation omitted). Like Paragraph (b)(1), Paragraph (b)(8) "clearly contains a scienter requirement: the accused must knowingly" possess material that depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct. *Phagan*, 268 Ga. at 278 (3) (c) (quote regarding Paragraph (b)(1)). And for the same reason our Supreme Court concluded that the scienter requirement means that the State must prove a defendant's knowledge as to every element of the crime defined in Paragraph (b)(1), we conclude that the State must prove a defendant's knowledge as to every element of the crime defined in Paragraph (b)(8), including that the person depicted in the image was a minor.

This does not end our analysis of Gerbert's argument, but it does determine the outcome. In *Henderson*, we concluded that the State proved that the defendant knew the children depicted were minors because the images showed children who were clearly prepubescent. 320 Ga. App. at 555 (1). But here, the nature of the State's proof to establish knowledge is different. The only evidence the State offered was the direct testimony of S. P. that she was 17 at the time the image was created and that she did not know Gerbert. Nothing about the image itself makes clear that S. P. was underage, and the State does not argue that it does. Gerbert argues that he never met

20

S. P., had no connection to the image's creation, and did not know her age at the time it was created; the State does not contest this, other than to say his concealment of the image was sufficient to allow the jury to conclude he knew the image was illegal. Although we concluded above that the evidence of the hidden folders was relevant to show Gerbert's knowing possession, we can find no authority for the State's implausible argument that mere concealment of images, standing alone, is sufficient to prove a defendant's knowledge that those images depict minors. And in the absence of authority for such a non-obvious proposition, we decline to accept the State's argument. Our independent review of the record reveals no other evidence supporting a conclusion that Gerbert knew of S. P.'s age, and thus the State failed to

prove that Gerbert knew the age of S. P. in the images.[5] Accordingly, we reverse his

conviction as to Count 11.

3. Gerbert next argues that the trial court erred in admitting evidence of other

acts. We disagree.

The other acts evidence showed that in around 1999, Rhonda Weaver,

Gerbert's ex-wife, went to a bedroom where her then-minor sister, J. L., had been

---

[5] Our opinion that the State failed to prove Gerbert's knowledge is limited to the specific evidence of this case, namely the image itself that does not make clear the individual was a minor and the location of the file in a hidden folder. Certainly, to establish the defendant's requisite knowledge, the State may rely on other circumstantial evidence, including the "words, conduct, demeanor, motive, and all other circumstances connected with the act for which the [defendant] is prosecuted." *Freeman*, 329 Ga. App. at 432 (1). We are not called upon to determine what other circumstances would be sufficient to establish a defendant's knowledge, but note that suggestive titles and labels associated with the images may be sufficient evidence to establish that the defendant knew the individuals in sexually explicit images were minors. *See, e.g.*, *United States v. Haymond*, 672 F.3d 948, 957 (10th Cir. 2012) (citing caselaw that the scienter requirement under 18 U.S.C. § 2252 can be met by "evidence that a defendant deliberately used search terms associated with child pornography . . . when trolling LimeWire" which would "support a finding that he knew that the images retrieved contained child pornography"); *United States v. Oufnac*, 449 Fed. Appx. 472, 477 (6th Cir. 2011) (the labels or titles of images suggesting their nature as child pornography would authorize jury to conclude that the defendant knowingly possessed child pornography in violation of 18 U.S.C. § 2252A); *United States v. Payne*, 341 F.3d 393, 404 (5th Cir. 2003) (holding that "the number of images in [the defendant's] possession, taken together with the suggestive titles of the photographs," among other evidence, supported the jury's inference that the defendant knew he was receiving child pornography in violation of 18 U.S.C. § 2252A).

sleeping. Weaver discovered Gerbert sitting in the dark, crouched in the corner of J. L.'s bedroom. When Weaver asked what Gerbert was doing, he responded that he was just watching J. L. sleep, which he later described as a "voyeuristic activity." Weaver also described that Gerbert's relationship with J. L. was weird and embarrassing, because Gerbert and J. L. would often "spoon" on the couch when J. L. was 11 years old. J. L., as an adult, separately testified that while living with Gerbert and when she was 12 years old, she saw images on Gerbert's computer that he explained to her were sex toys.

Gerbert argues that the court erred in admitting this evidence under OCGA § 24-4-404 ("Rule 404") and OCGA § 24-4-414 ("Rule 414"). Although the State cited both Rule 404 and Rule 414 in its pretrial notice of intent to introduce the subject evidence, it abandoned its reliance on Rule 414, and its pretrial arguments on the admissibility of the evidence focused solely on Rule 404. Therefore, we review the trial court's decision to admit the evidence under Rule 404.

We review a trial court's evidentiary rulings for an abuse of discretion. *McCoy v. State*, 332 Ga. App. 626, 628 (774 SE2d 179) (2015). Rule 404(b) provides

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity

23

therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b) is an evidentiary rule of exclusion, and for other acts evidence to be admissible, the State must show that: (1) the evidence is relevant to an issue other than defendant's character, (2) there is sufficient proof so that the jury could find that defendant committed the act, and (3) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403 ("Rule 403"). *State v. Jones*, 297 Ga. 156, 158-59 (1) (773 SE2d 170) (2015); *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015). Other acts evidence need not be excluded merely because a propensity inference may be drawn. However, Rule 404(b) prohibits the introduction of this evidence when its relevance relies solely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. *See United States v. Covington*, 565 F.3d 1336, 1341 (11th Cir. 2009) ("Rule 404(b) prohibits the introduction of pure propensity evidence."); *see also United States v. Stacy*, 769 F.3d 969, 974 (7th Cir. 2014). Gerbert challenges only the first and third prongs of the Rule 404(b) test.

(a) *Relevancy of other acts evidence*

The State argued that the other acts evidence was relevant to show Gerbert's knowledge and intent. The trial court admitted the other evidence without specifying for which purpose it allowed the evidence, but it did charge the jury that the evidence could be considered only for the purposes of showing knowledge and intent.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. This standard is a liberal one. *See Jones*, 297 Ga. at 159 (2) n.2. And "evidence that an accused committed an intentional act generally is relevant to show – the evidence, in other words, has *some* tendency to make more or less probable – that the same defendant committed a similar act with the same sort of intent, especially when the acts were committed close in time and in similar circumstances." *Olds v. State*, 299 Ga. 65, 72 (2) (786 SE2d 633) (2016) (citations omitted; emphasis in original).

The other acts evidence was relevant on the issue of intent. In addition to the charges for which he was convicted, Gerbert was also charged with multiple counts of child molestation for (1) inserting his penis into A. W.'s vagina (Count 1) and (2) taking sexually explicit photographs of A. W. with the intent to arouse his sexual desires (Count 2). Although these charges were nolle prossed after the jury could not

reach a verdict, by pleading not guilty, Gerbert put intent at issue. "[B]ecause a plea of not guilty puts the prosecution to its burden of proving every element of the crime – including intent – evidence of other acts that tends to make the requisite intent more or less probable to any extent is relevant." *Olds*, 299 Ga. at 75 (2). *Olds* makes clear, however, that a simple plea of not guilty, standing alone, does not categorically allow for the admission of other acts evidence to establish intent. *Id*. at 72-76 (2).

It was not just Gerbert's entry of a not guilty plea that put intent at issue. Intent was clearly disputed with respect to the second child molestation offense charging Gerbert with taking sexually explicit photographs of A. W. with the intent to arouse his sexual desires (Count 2). A. W. testified that Gerbert took the sexually explicit photographs. In his defense, Gerbert claimed that A. W.'s boyfriend had taken the pictures at issue and had placed them on the laptop that the boyfriend stole from Gerbert and that was subsequently recovered.

The other acts evidence was relevant because it made it more probable that Gerbert took the pictures with the intent to arouse his sexual desires. The other acts evidence, which Gerbert does not dispute, showed that he was in J. L.'s room at night, crouched in a corner, for "voyeuristic" reasons; he frequently spooned J. L. such that J. L's sister, Gerber's ex-wife, became jealous; and Gerbert described sexual toys to

26

J. L. Although Gerbert argues that these acts were not crimes, his conduct was certainly indicative of his state of mind. *See State v. Ashley*, S15G1207, 2016 Ga. LEXIS 468, *14 (2) (a), 2016 WL 3693794, *4 (2) (a) (Ga. July 8, 2016); *see also Olds*, 299 Ga. at 75 (2) (uncharged misconduct can be relevant and admissible to prove intent in both general and specific intent cases). In particular, based on Gerbert's admitted voyeurism of a minor, a jury could properly infer that Gerbert was sexually attracted to underage girls and derived some sexual gratification by watching them. The other acts evidence therefore made it more probable that Gerbert intended to take the sexually explicit images of A. W. and place the images on multiple devices so that he could continually access them to satisfy his sexual desires. *See Bradshaw*, 296 Ga. at 657 (3) ("Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses.") (punctuation omitted). The other acts evidence was therefore relevant to disprove the truth of his defense that he was not responsible for taking sexually explicit photographs of A. W., but that her boyfriend did. *See Huddleston v. United States*, 485 U.S. 681, 685 (108 S. Ct. 1496, 99 LE2d 771) (1988) ("extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind

and the only means of ascertaining that mental state is by drawing inferences from conduct"). Thus, the trial court did not err in concluding that the other acts evidence was relevant on the issue of intent. Because the evidence was relevant on the issue of intent, we need not consider whether it was relevant on the issue of knowledge.

(b) *Whether the probative value was substantially outweighed by undue prejudice*

The determination of whether the probative value of other acts evidence is substantially outweighed by its prejudicial effect "lies within the discretion of the [trial] court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *Bradshaw*, 296 Ga. at 657-58 (3) (*citing United States v. Perez*, 443 F.3d 772, 780 (11th Cir. 2006)) (punctuation omitted). In close cases, the balance should be struck in favor of admissibility, because Rule 403 is an extraordinary remedy that should be used sparingly, as it permits the trial court to exclude probative evidence. *Id.* at 658 (3).

Gerbert argues that the extrinsic acts were different than and temporally remote from the charged offenses and that these factors reduced the probative value of the

28

other acts. But the "overall similarity between the extrinsic act" and the "temporal remoteness" are not the only factors that the court must consider. The court must make a "common sense assessment of *all* the circumstances surrounding the extrinsic" act, including prosecutorial need. *Bradshaw*, 296 Ga. at 657-58 (3) (emphasis supplied). The prosecutorial need was greater in this case because Gerbert strongly asserted that he did not put the images of child pornography on his computer, and we concluded that the other acts evidence was relevant to disprove his defense. *See Olds*, 299 Ga. at 76 (2) ("'"The more strongly an issue is contested, the greater the justification for admitting other-act evidence bearing on the point.").

The probative value of the evidence was not substantially outweighed by its prejudicial effect. It is unlikely that the jury would be more inflamed in any appreciable measure by the relatively minor other acts evidence than the jury already was by the heinous sexual offenses against children with which he was actually charged. The impact of the other acts evidence was thus relatively minimal. *Cf. United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006) ("Evidence is unfairly prejudicial and thus should be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.") (citation and

29

punctuation omitted). And any risk of unfair prejudice was mitigated by the trial court's limiting instruction where the court reminded the jury that it could consider the evidence only to the extent the evidence was relevant to show Gerbert's knowledge and intent in the charged offenses, and that the jury could not consider the evidence for any other purpose. *See Eubanks v. State*, 332 Ga. App. 568, 570 (1) (774 SE2d 146) (2015). Under these circumstances, we cannot say the trial court abused its discretion in concluding that the probative value was not substantially outweighed by undue prejudice.

4. Gerbert next argues that his trial counsel rendered ineffective assistance in various ways. To prevail on his claim, Gerbert "must show that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." *Scott v. State*, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (*citing Strickland v. Washington*, 466 U.S. 668 (104 S. Ct. 2052, 80 LEd2d 674) (1984)). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, we do not have to examine the other prong. *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004). In reviewing a claim of ineffective assistance, appellate courts review a trial court's factual findings

30

for clear error and its legal conclusions de novo. *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014).

(a) Gerbert argues that trial counsel was deficient for failing to file a motion to suppress the sexually explicit images recovered from his computer.

To prevail on an ineffectiveness claim based on trial counsel's failure to file or pursue a motion, the defendant must show that the motion would have been granted had the motion been filed or pursued. *See, e.g., Chalk v. State*, 318 Ga. App. 45, 48 (1) (c) (733 SE2d 351) (2012) (trial counsel's failure to file motion to dismiss on speedy trial grounds); *Feaster v. State*, 283 Ga. App. 417, 421 (5) (a) (641 SE2d 635) (2007) (trial counsel's failure to pursue motion to suppress).

Trial counsel testified at the motion for new trial hearing that he did not move to suppress this evidence because Gerbert abandoned the computer when he left it with a coworker and never attempted to recover it. We agree with trial counsel's evaluation of the merits of such a motion. "The constitutional protection of the Fourth Amendment does not apply to property which has been abandoned." *Watson v. State*, 247 Ga. App. 498, 499 (544 SE2d 469) (2001) (footnote omitted). Because a motion to suppress the images recovered from the Mac Mini would not have been successful,

trial counsel's failure to file the motion does not constitute ineffective assistance. *See Williams v. State*, 310 Ga. App. 90, 92 (2) (712 SE2d 113) (2011).

(b) Gerbert also argues that trial counsel was ineffective for failing to call Maureen, B. T.'s and A. W.'s mother, as a witness, because Maureen would testify that A. W. admitted that she had previously falsely accused Gerbert of child molestation. Trial counsel explained at the motion for new trial hearing that, although Maureen was initially willing to testify in Gerbert's defense, counsel eventually became concerned about her reliability as a witness, and then, close to the start of the trial, she disappeared and could not be located. Trial counsel testified that, after discussing the options with Gerbert, he elected not to pursue Maureen as a witness and, instead, use her absence to undermine the credibility of the molestation allegations made by her daughters.

"Trial strategy and tactics, such as deciding which witnesses to call, do not equate with ineffective counsel unless they are so patently unreasonable that no competent attorney would have chosen them." *Downer v. State*, 310 Ga. App. 136, 140 (3) (a) (712 SE2d 571) (2011) (footnote omitted). Based on the circumstances, Gerbert has failed to establish that trial counsel's decision not to call Maureen as a witness was patently unreasonable.

(c) Gerbert argues that trial counsel was also ineffective for failing to secure a ruling on his motion to dismiss the indictment for prosecutorial vindictiveness. In his motion to dismiss, Gerbert alleged that immediately after the court granted his request for a continuance to obtain an expert, the prosecutor at the time stated to defense counsel and to Gerbert's parents, "Nothing personal but I'm coming back with a new indictment and throwing the kitchen sink." The prosecutor subsequently obtained a new indictment in January 7, 2013 – the third and final indictment upon which Gerbert was tried and convicted – adding five additional counts. Gerbert argues that the former prosecutor obtained a new indictment with additional charges for the purpose of punishing him for asserting his right to a continuance to get an expert.[6]

Gerbert cannot prevail on his ineffectiveness claim because he cannot show that the motion to dismiss would have been granted had it been pursued. Although prosecutors have broad discretion in how to charge a defendant and may seek a superseding indictment at any time prior to trial, a defendant may obtain dismissal of a superseding indictment by establishing that the prosecutor acted vindictively,

_____

[6] Sometime after Gerbert filed the motion to dismiss, a new prosecutor took over the case.

33

meaning that the prosecutor was motivated by a desire to punish the defendant for exercising his rights. *See United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006); *Piper v. State*, 320 Ga. App. 120, 122 (739 SE2d 407) (2013) (*citing United States v. Goodwin*, 457 U.S. 368, 384 n.19 (102 S. Ct. 2485, 73 LE2d 74) (1982)). To establish prosecutorial vindictiveness, the defendant must either provide evidence of actual vindictiveness or show that the particular circumstances of his case give rise to a presumption of vindictiveness. *Goodwin*, 457 U. S. at 384 & n.19; *United States v. Saltzman*, 537 F.3d 353, 359-60 (5th Cir. 2008); *see also Piper*, 320 Ga. App. at 122 (defendant failed to produce evidence of actual vindictiveness and circumstances of case were insufficient to establish a presumption of vindictiveness). To determine whether the presumption of vindictiveness applies, we must examine whether the prosecutor's actions in the context of the entire proceedings establish a "realistic likelihood of vindictiveness." *Saltzman*, 537 F.3d at 360; *Barner*, 441 F.3d at 1317. If a defendant establishes a realistic likelihood of vindictiveness, the government may rebut the presumption of vindictiveness by proffering legitimate, objective reasons for its conduct. *Saltzman*, 537 F.3d at 360; *see also Lopez v. State*, 267 Ga. App. 178, 179-80 (1) (598 SE2d 898) (2004) (when the defendant establishes an "appearance of vindictiveness, the burden is shifted to government to prove that the decision to

34

reindict with more severe charges did not result from any vindictive motive")
(citation omitted).

Here, Gerbert has failed to provide proof of actual vindictiveness and has failed to establish a realistic likelihood of vindictiveness. Although Gerbert's allegation that the former prosecutor stated that he would return with a new indictment that "threw in the kitchen sink" raised the issue of actual vindictiveness, Gerbert was required to present actual evidence of vindictiveness, because unsworn allegations are not evidence. *Keyser v. Allied Holdings, Inc.*, 266 Ga. App. 192, 193 (1) (596 SE2d 713) (2004); *see also Fred R. Surface & Assocs., Inc. v. Worozbyt*, 151 Ga. App. 638, 640 (3) (260 SE2d 762) (1979) (providing that a party's pleadings merely present the issues and the moving party must support the allegations with proof when disputed). Gerbert did not submit such proof, because in his examination of trial counsel at the motion for new trial hearing, he never elicited testimony that the former prosecutor made a statement reflecting a vindictive desire to punish Gerbert for obtaining the continuance. Thus, Gerbert failed to present evidence of actual vindictiveness sufficient to allow us to conclude that the motion to dismiss would have been granted had it been pursued.

Gerbert has similarly failed to establish a realistic likelihood of vindictiveness. His claim is based primarily on the former prosecutor's purported statement that he interprets as reflecting a desire to punish him for obtaining the continuance, but we already concluded that there is no proof the prosecutor ever made the vindictive statement.

Gerbert also asserts that the prosecutor's actions were vindictive because no new information came to light to justify the additional charges. The first and second indictments are not included in the record, and so it is not possible to determine exactly what conduct was charged prior to the continuance and when those indictments were returned. We can deduce from the record, however, that Gerbert was to be initially arraigned in March 2012 on two counts of child molestation, aggravated sodomy, two counts of sexual exploitation of children, and aggravated sexual battery. And we know from the trial evidence that in June 2012, the investigator recovered Gerbert's Mac Mini that contained sexually explicit images of S. P., conduct for which Gerbert was charged with sexual exploitation of children (the count that we reversed above). Thus, at least one count was based on information that came to light at least after the first indictment was returned. And as suggested by the State on appeal, the prosecutor's decision not to indict Gerbert on additional charges

36

sooner could have been attributed to the prosecutor's hope that the case would be resolved without a trial. Given that at least one count was based on information that came to light following the return of the first indictment, and it is not clear when the second indictment was returned, the prosecutor's decision to obtain the third indictment could equally be attributable to legitimate reasons, which is insufficient to raise the presumption of vindictiveness. *See United States v. Esposito*, 968 F.2d 300, 306-07 (3d Cir. 1992) ("Where a prosecutor's conduct is equally attributable to legitimate reasons, a defendant must show actual vindictiveness for a presumption will not apply."). Without a showing of prosecutorial vindictiveness, trial counsel cannot be said to have been ineffective for failing to pursue the motion to dismiss.

In sum, we reverse Gerbert's conviction on Count 11, and affirm his remaining convictions.

*Judgment affirmed in part and reversed in part. Phipps, P. J. concurs. Dillard, J. concurs fully and specially*.

A16A0868.  GERBERT v. THE STATE.

DILLARD, Judge, concurring fully and specially.

While I concur fully in the majority's opinion, I write separately to address Gerbert's argument that the evidence was insufficient to sustain his conviction for possessing sexually explicit photographs of A. W. As discussed by the majority in Division 2 (b) (i), Gerbert relies upon *Barton v. State*[1] to argue that the evidence was insufficient to sustain this conviction because the relevant images were located in hidden files.

I agree with the majority that the instant case is readily distinguishable from *Barton*. And I write separately to make clear that a conviction for possession of child pornography does *not* hinge upon a defendant engaging in affirmative conduct to *save* or *download* the relevant files/copies that are presented in evidence, nor does a conviction always require that the defendant have knowledge of the relevant files'

---

[1] 286 Ga. App. 49 (648 SE2d 660) (2007).

existence, as Gerbert appears to take *Barton* to mean. Indeed, as thoroughly explained

by this Court in *New v. State*,[2] and as recognized by the majority, the holding in

*Barton* is a limited one.

In *New*, we explained as follows:

In *Barton*, we concluded that evidence of the temporary Internet cache files *alone* was not sufficient to sustain the conviction under OCGA § 16-12-100 (b) (8) because there was insufficient evidence to prove knowing possession of the files themselves. *Barton* makes no mention whatsoever of any other evidence presented by the State, which we understand to mean that the temporary Internet files represented the State's *sole* evidence, and *Barton* therefore narrowly approached the question in terms of *present* possession of child pornography based on the peculiar facts of that case. But *Barton* cannot be read to foreclose the State's ability to prosecute and convict a defendant for prior possession of child pornography when automatic backup files, in addition to other direct or circumstantial evidence, establish same.[3]

Indeed, in *New*, we distinguished *present* possession cases from situations in which

the State proves *prior* possession. And in doing so, we explained that

[i]n the context of prior possession of child pornography, a computer user knowingly possesses the contraband when the user intentionally

---

[2] 327 Ga. App. 87 (755 SE2d 568) (2014).

[3] *Id*. at 92-93 (1) (footnotes omitted).

2

downloads child pornography to the computer but later deletes the file or when he or she performs some function to reach out and select the image from the Internet. Indeed, a computer user who intentionally accesses child pornography images on a website gains actual control over the images, just as a person who intentionally browses child pornography in a print magazine "knowingly possesses" those images, even if he later puts the magazine down. In this way, any backup or residual files become evidence of possession at a prior point; the files need not represent the literal contraband. Instead, the backed up or residual files are proof that a crime has occurred—that is, proof of the corpus delicti. And while these files standing alone are not sufficient to establish that a defendant knowingly possessed those images at a prior point, they can be used in conjunction with other circumstantial evidence to prove such possession. The totality of the evidence presented by the State, of course, must support an inference that the act was wilful and not inadvertent.[4]

Thus, in *New*, we concluded that

even if the State did not (and could not) present evidence that New was aware of the shadow copy images' existence and, thus, could not prove *present* possession of those files, there was more than sufficient circumstantial evidence for the jury to conclude that New knowingly possessed child pornography on his computer at a prior point.[5]

---

[4] *Id*. at 93-94 (1) (punctuation and footnotes omitted).

[5] *Id*. at 95 (1).

And the files that remained on New's computer "were evidence of prior possession of the original images, no matter the manner in which those original images were viewed—whether New downloaded the original images or limited his action to temporarily viewing the images on a web page."[6]

Thus, I wish to reiterate that although *Barton* speaks to a lack of affirmative conduct on the part of the defendant therein to save or download the subject files to his computer, the focus of that opinion was on *present* possession of the files at issue because, there, we also focused on the fact that the defendant was unaware of the files' existence *and* could not access or retrieve the images (facts which are wholly inapposite to those in the case *sub judice*). And once again, as thoroughly detailed in *New*, nowhere did *Barton* suggest that a defendant could not be convicted of *prior* possession of child pornography when automatically saved files of which a defendant is unaware (*i.e.*, files saved to a computer without the defendant taking affirmative conduct with regard to those exact files/copies) *and* other circumstantial or direct evidence may support a conviction for same.[7]

---

[6] *Id*.

[7] *See id*. (noting that automatically stored "shadow copies, combined with the expert's testimony as to LimeWire logs that indicated searches for and downloads of child pornography, the number of child pornography images discovered, the

Because this distinction might still be unclear to the bench and bar, it is worth emphasizing that the approach we took in *Barton* is often referred to as the "present possession approach," which has been described as analogizing a computer to a file cabinet with the temporary Internet file cache as a file drawer.[8] And under this approach, "[t]he user has reached out to the Internet through use of a web browser and selected an image, after which the computer automatically 'files' a copy of that image in its file drawer."[9] Viewed in this way, the possession of the image begins when "the image is cached and ends when the file is deleted and overwritten by other data."[10] Therefore, knowledge of the cache becomes significant because "the focus of the analysis is on the images actually *in* the cache,"[11] which are the contraband

---

user-installed deletion software and attendant settings, and the fact that [the defendant] photographed B. N. and T. P. engaged in 'strip wrestling,' presented the jury with circumstantial evidence by which to find that [the defendant] violated OCGA § 16-12-100 (b) by knowingly possessing child pornography at a prior time").

[8] Ty E. Howard, *Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files*, 19 BERK. TECH. L.J. 1227, 1254-55 (V) (A) (1) (Fall 2004).

[9] *Id*. at 1254.

[10] *Id.*

[11] *Id.* at 1255 (emphasis supplied).

themselves.[12] Thus, using this approach in *Barton*, we concluded that the defendant's

lack of knowledge or access to the cache of temporary Internet files was dispositive;

and without a showing of any affirmative action by the defendant to place the files

*in* the cache or to interact with the files *in* the cache, we determined that the State

failed to prove that he presently possessed *those* files.[13]

Similarly, in *New*, we were presented with a situation in which images of child

pornography were located in a portion of the defendant's hard drive that was,

according to a computer forensics expert, inaccessible to an ordinary user—the

system volume information. But in *New*, we were cognizant that, "unlike tangible

contraband, digital images do not necessarily exist in a singular form."[14] Indeed, with

data stored in system volume information, a cache of temporary Internet files,

unallocated disk space, or any other portion of a computer hard drive responsible for

---

[12] *Id.* (V) (A) (2); *see also Wise v. State*, 364 SW3d 900, 904 (I) (Tex. Crim. App. 2012) ("Under the first approach, termed a present-possession approach, a court will analyze the sufficiency of the evidence to determine whether a defendant had the knowledge and ability to access the files in their present format. In the context of deleted files, if an ordinary computer could not access files that have been deleted by a user or an automatic computer program, then the defendant could not presently have care, control, or management of the images." (citations omitted)).

[13] 286 Ga. App. at 52 (1).

[14] Howard, *supra* note 8, at 1254 (V).

automatic copying and/or backup functions, "there are at least two temporally distinct versions of the image—the image on the computer screen and a copy of the image automatically stored . . . ."[15] Thus, in *New*, we assessed the facts under the so-called "evidence of approach," in which cached temporary Internet file images, system volume shadow copies, and other forms of backed-up or residual data merely represent a recording of the original contraband.[16]

Using the "evidence of approach," the computer becomes analogous to a video camera recording the user's activity, rather than a file cabinet as is the case with the "present possession approach."[17] Accordingly, the user possesses the contraband when he or she performs some function to reach out and select the image from the Internet, and possession ends when he or she leaves the image.[18] In this way, any

---

[15] *Id.* at 1253 (V) (footnote omitted).

[16] Howard, *supra* note 8, at 1255 (V) (A) (2).

[17] *Id.*

[18] *Id.*; *see also Wise*, 364 SW3d at 905 (I) ("[E]vidence of pornography found in a computer cache *could* be sufficient to support a conviction because the presence of the images in the cache is evidence that, at some earlier point, a defendant knowingly or intentionally possessed the images by viewing them online." (emphasis supplied)). Of course, a different analysis applies if the user downloads the image to the computer, in which case possession would continue indefinitely, as in *Haynes v. State*, 317 Ga. App. 400 (731 SE2d 83) (2012). There, we affirmed a conviction for possession of child pornography when "the evidence showed that the files containing

backup or residual file becomes *evidence of* possession at a prior point; the file does not represent the literal contraband.[19]

As a practical matter, the logic of the "evidence of approach" becomes apparent when one considers a hypothetical situation in which an individual visits a bookstore that secretly deals in child pornography, specifically requests a child pornography magazine, sits down to read the magazine and examine its content, and then returns the magazine before leaving.[20] If law enforcement obtained a closed-circuit videotape of what transpired, showing the child pornography images in great detail, it would strain credulity to suggest that the above individual could not be charged with possession of child pornography for his possession of the magazine at an earlier

---

the child pornography on [the defendant's] computer had been intentionally moved or downloaded to his computer and that the files had been modified on various dates." *Id.* at 401 (1).

[19] The "Evidence Of" approach does not preclude prosecution for possession of residual files that *could* be considered literal contraband, as when the surrounding circumstances are more akin to continued possession of downloaded images. *See State v. Al-Khayyal*, 322 Ga. App. 718, 724-25 (744 SE2d 885) (2013) (reversing grant of plea in bar and motion to dismiss when defendant deleted original child pornography files before entering the country, but possessed a computer containing deleted .rar files, and there was evidence that defendant was aware of the location of the deleted .rar files, could have accessed the files with readily available software, and had advanced technical knowledge).

[20] *See* Howard, *supra* note 8, at 1265-66 (VI) (A).

8

time.[21] Likewise, a computer user who intentionally accesses child pornography images on a website "gains actual control over the images, just as a person who intentionally browses child pornography in a print magazine 'knowingly possesses' those images, even if he later puts the magazine down."[22] Thus, viewing child pornography on a web page constitutes possession of "*material which depicts* a minor

---

[21] *Id.* at 1267.

[22] *United States v. Kain*, 589 F3d 945, 950 (I) (C) (8th Cir. 2009); *see also People v. Flick*, 790 NW2d 295, 298 (Mich. 2010) (rejecting defendants' arguments that they "merely viewed" rather than "knowingly possessed" child pornography accessed on Internet web pages because "the many intentional affirmative steps taken by defendants to gain access and control over child sexually abusive material belie[d] their claims that they merely viewed the depictions"); *Commonwealth v. Diodoro*, 932 A2d 172, 174 (¶ 11) (Pa. Super. Ct. 2007) ("[The appellant's] actions of operating the computer mouse, locating the Web sites, opening the sites, displaying the images on his computer screen, and then closing the sites were affirmative steps and corroborated his interest and intent to exercise influence over, and, thereby, control over the child pornography."), *aff'd*, *Commonwealth v. Diodoro*, 970 A2d 1100 (Pa. 2009).

9

or a portion of a minor's body engaged in any sexually explicit conduct,"[23] so long as the evidence supports an inference that the act was wilful and not inadvertent.[24]

---

[23] OCGA § 16-12-100 (b) (8) (emphasis supplied); *see Al-Khayyal*, 322 Ga. App. at 722-23 (explaining that OCGA § 16-12-100 (b) (8) has been construed to criminalize the possession or control of data capable of generating images of child pornography); *see also Tecklenburg v. App. Div. Super. Ct.*, 87 Cal. Rptr. 3d 460, 473 (II) (Cal. Ct. App. 2009) (distinguishing California's statute, which criminalized "knowing[ ] possess[ion] or control[ ] [of] any matter, representation of information, data, or image . . ." (emphasis omitted), with federal statute that "does not make it illegal to knowingly possess or control an image of child pornography; only to knowingly possess the material *containing* the image" (emphasis added)). *Cf.* OCGA § 16-12-100.1 (criminalizing the electronic transmission of sexually explicit pictures or conversations to minors); OCGA § 16-12-100.2 (criminalizing the use of online services to solicit or attempt to solicit a child for the purposes of committing sexual offenses, and criminalizing online service owners or operators' intentional or willful permission to violate this section); *State v. Brown*, 250 Ga. App. 376, 380 (1) (551 SE2d 773) (2001) (holding, in affirming conviction for sexual exploitation of children by using a computer to send images of child pornography to another person, that OCGA §§ 16-12-100.1 and -100.2 "are directed primarily at prohibiting direct interactions with minor victims located in Georgia").

[24] *See Tecklenburg*, 87 Ca. Rptr. 3d at 473 (II) (holding that evidence established that defendant possessed child pornography images by knowingly viewing images online); *see also Flick*, 790 NW2d at 305-06 (contrasting the possession of child pornography when there have been affirmative steps taken to view it online with the lack of evidence of possession of child pornography when it is viewed accidentally or inadvertently); *State v. Mercer*, 782 NW2d 125, 132 (¶ 18) (Wis. Ct. App. 2010) (recognizing the distinction between a person who knowingly seeks out child pornography on a computer, such that he possesses the images, and one who inadvertently and innocently views child pornography).

10

So again, using a present-possession approach in *Barton*, the cached pornographic files were viewed by this Court as constituting the literal contraband that the defendant was accused of possessing. And the Court in *Barton* agreed with the defendant that he could not be convicted of knowing possession when "(1) he took no affirmative action to store the images on his computer; (2) he was unaware that the computer had automatically saved those images to the hard drive; and (3) he had no ability to retrieve or access those images."[25] But had this Court applied the evidence-of approach in *Barton* to consider *prior* possession, as done in *New*, Barton's conviction would have been affirmed *if* the State presented other circumstantial evidence to show that he reached out and affirmatively sought to access child pornography. The evidence of such pornography in the computer cache alone would have been insufficient, but if other evidence existed, it would have been of no consequence that the defendant did not (1) store the files on his computer, (2)

---

[25] 286 Ga. App. at 50 (1); *see also id.* at 52 (1) ("[T]here was no way that Barton could have learned of the cache files in the normal course of using his computer. Nor did the State present any circumstantial evidence that would have allowed the jury to infer Barton's knowledge of these files—i.e., they did not show that Barton was an experienced or sophisticated computer user who would have been aware of this automatic storage process. In short, the State presented *no* evidence that Barton was aware of the existence of the files at issue, and in doing so, they failed to prove that Barton knowingly possessed these images.").

know that the images were automatically saved to the hard drive, or (3) have the ability to access the images on the hard drive. However, for reasons that were not entirely clear to this Court when it decided *New* (the panel in *New* not having the benefit of reviewing *Barton*'s record), the panel in *Barton* analyzed the case under a present-possession approach. But the facts presented in *New* permitted this Court to apply the evidence-of approach to consider *prior* possession in that case.

Again, under the evidence-of approach used in *New*, leftover files do not always represent the literal contraband, but instead—when combined with other circumstantial evidence—may represent *evidence* of *prior* possession.[26] In this regard, the necessity of other circumstantial evidence—in addition to the duty imposed upon prosecutors, judges, and juries—acts as a safeguard against the understandable concern regarding "the prevalence and sophistication of some computer viruses and hackers that can prey upon innocent computer users."[27] But "knowing possession" is

---

[26] *But see supra* notes 18 & 19.

[27] *United States v. Pruitt*, 638 F3d 763, 766 (II) (11th Cir. 2011); *see also id.* ("[P]rosecutors, judges, and juries have a duty to safeguard—as best as they are able—potential defendants when receipt of child pornography might well have been truly inadvertent.").

12

mainly an issue of fact, not law, and "the specter of spam, viruses, and hackers must not prevent the conviction of the truly guilty."[28]

In conclusion, although *Barton* is limited to a present-possession approach, it cannot—and should not—be read to "foreclose the State's ability to prosecute and convict a defendant for prior possession of child pornography when automatic backup files, in addition to other direct or circumstantial evidence, establish same."[29] And to the extent that the bench and bar continue to interpret *Barton* to do so, this Court may need to one day revisit the holding in that case and explicitly overrule same if it continues to cause substantial confusion on this point.

---

[28] *Id.*

[29] *New*, 327 Ga. App. at 92-93 (1) (footnotes omitted).